[Civ. No. 10548. First Appellate District, Division Two.—October 28, 1937.]

MILLAR WHITE, Appellant, v. A. L. BRINKMAN et al., Respondents.

Frank W. Creely for Appellant.

Carleton L. Rank, Fred C. Hutchinson, City Attorney, John D. Phillips, Assistant City Attorney, Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Respondents.

JOHNSON, J., *pro tem.*—This is an action in which plaintiff seeks recovery of damages for alleged malicious prosecution; and plaintiff's appeal is from a judgment against him entered upon an order made March 27, 1937, sustaining demurrers interposed separately by the five individually named defendants. In advance of such order, the plaintiff had on March 4th voluntarily dismissed the action as against the defendant, Maryland Casualty Company; and by stipulation paragraphs IV and XVIII of the complaint relating to that defendant had been stricken out. The fictitiously named defendants are to be treated as nonexistent for the purposes of this appeal. While the demurrers to the complaint were both general and special, the fundamental question is whether the complaint states a cause of action against the defendants

or any of them. According to the complaint, plaintiff was at all times mentioned a duly licensed building contractor engaged in business as such in Contra Costa and Alameda Counties. The defendant Brinkman was the chief building inspector, and the defendant Thompson the city manager of the city of Berkeley in Alameda County, the city manager being the person in authority over the chief building inspector.

The defendant Sherry was a deputy district attorney of Alameda County and ex officio prosecuting attorney for the city of Berkeley. The defendants Roth and Kneiss are not made defendants in any official character.

The complaint charges that at divers times between December 7, 1936, and February 2, 1937, the three public officers and the defendants Roth and Kneiss maliciously engaged in a conspiracy to injure plaintiff in his social and business relations; and to that end caused plaintiff to be arrested on a charge of having committed a misdemeanor in violating a certain provision of Ordinance No. 1473 N. S. of the city of Berkeley. In this respect it is averred that the arrest was made under a warrant issued by the judge of the Justice's Court of the City of Berkeley, and founded on a complaint verified by the oath of the defendant Brinkman made before the defendant Sherry. In that complaint it was charged that on February 1, 1937, in the city of Berkeley, the plaintiff, White, violated section 2801 of said ordinance by causing "an excavation to be made on his own property without having protected said excavation so that the soil of the adjoining property would not cave-in and settle". In respect of this charge, the plaintiff alleges that he did not make any excavation on February 1, 1937; that he did not own any property in the city of Berkeley, and that he had not violated any of the terms and provisions of the municipal ordinance "in the manner or as alleged in said complaint".

Plaintiff's complaint further states that under the authority of the warrant of arrest, he was taken into custody by the police on February 4th, and after being booked on the charge, was held in the station for about half an hour until he furnished bail for his release in the sum of $200. Thereafter on that day he was arraigned in the justice's court; and upon pleading that he was not guilty, he demanded a jury trial, which was set for February 15th. Meanwhile, the action

against plaintiff was on February 11th dismissed by the court on motion of defendant Sherry, the official prosecuting attorney.

Plaintiff charges that the acts of the defendants in causing his arrest and imprisonment were malicious and without probable cause; and his prayer is for $345 as special damages together with $60,000 as exemplary and punitive damages.

The order sustaining the demurrers to plaintiff's complaint allowed ten days for amendment; but the right of amendment having been renounced by plaintiff in order to facilitate his intended appeal, judgment was entered against him on April 2d.

So far as the defendants Roth and Kneiss are concerned, no specific charges are made against them in plaintiff's complaint, except that those defendants are in effect said to have joined with the three public officers in a common plan, maliciously and without probable cause, to bring about the arrest of plaintiff for the misdemeanor charged in the complaint filed by Brinkman as chief building inspector. The defendants Brinkman, Thompson and Sherry have joined in a brief in support of the judgment in their favor, and a separate brief has been filed by the defendant Roth. In the absence of any brief on behalf of the defendant Emily Kneiss, it is presumed that she stands in the same position as her co-defendant Roth.

█ In cases of this character liability for damages cannot be made to rest on mere conspiracy. The gravamen of the action is the malicious prosecution of the criminal charge without probable cause. (*Dowdell* v. *Carpy*, 129 Cal. 168, 171 [61 Pac. 948]; *Andrews* v. *Young*, 21 Cal. App. (2d) 523 [69 Pac. (2d) 891].) In regard to the liability of the three officers, counsel for plaintiff recognizes that, for reasons of public policy, officers exercising judicial or *quasi*-judicial powers in the performance of their duties are immune from civil liability. But laying stress upon an allegation in the complaint that the charge of violation by plaintiff of the municipal ordinance was wholly false, malicious and unfounded, and was known to be so by each and all of the defendants, plaintiff insists that the officers were acting wholly without jurisdiction, and are no more entitled to exemption from civil liability than if they were acting in a strictly private and personal capacity.

It must be remembered, however, that the complaint expressly alleges that Brinkman as chief building inspector, Thompson as city manager and Sherry as *ex officio* prosecuting attorney of Berkeley, acting in concert with the other defendants, caused the alleged malicious prosecution of the charges against plaintiff. It was thus in their official capacities that in this action the officers were charged with wrongdoing and brought into court. The naked statement that an official, acting in the exercise of *quasi*-judicial powers, caused the institution of a criminal prosecution on a complaint which he knew to be false is but tantamount to a repetition of a previous statement that he acted maliciously and without probable cause. ██ The element of probable cause is to be viewed subjectively as well as objectively. Its presence involves consideration not only of the actual facts of the case, but the facts and circumstances as comprehended by the mind of the actor according to his honest and reasonable belief. One knowingly pressing a baseless criminal charge acts without probable cause, and is guilty of malice *per se*. (*Bowie* v. *Stackpole,* 119 Me. 333, 335 [111 Atl. 409]: *Linitsky* v. *Gorman,* 146 N. Y. Supp. 313, 318; *Parker* v. *Huntington,* 2 Gray (68 Mass.), 124, 128.) As is said in *Burt* v. *Smith,* 181 N. Y. 1, 5 [73 N. E. 495, 2 Ann. Cas. 576]: ''While malice is the root of the action, malice alone even when extreme is not enough, for want of probable cause must also be shown. Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. The want of probable cause does not mean the want of any cause, but the want of any reasonable cause, such as would persuade a man of ordinary care and prudence to believe in the truth of the charge. Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest on the prosecutor's belief in his guilt when based on reasonable grounds. One may act on what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable. Belief alone, however sincere, is not sufficient, for it must be founded on circumstances which make the belief reasonable. If probable cause exists, it is an absolute protec-

tion against an action for malicious prosecution, even when express malice is proved.''

A malicious prosecution being one begun in malice without probable cause to believe the charge can be sustained, a complaint to enforce liability for such prosecution is properly confined to a statement of those substantive elements. Averments of conspiracy and of knowledge of the falsity of the charge, and the salting and peppering of the declaration with vituperative epithets may serve for embellishment, but contribute no substantial increment to the cause pleaded. In the conduct of a trial, evidence of conspiracy and knowledge of falsity of the charge may be relevant in proof of lack of probable cause and of malice; but for purposes of pleading such evidentiary averments add nothing material to the statement of the case, and are to be treated as surplusage.

We are brought then to the inquiry whether the complaint, stripped of its nonessentials, was amenable to the demurrers of the public officials. The exemption of judicial or *quasi*-judicial officers from civil liability for acts done in performance of their official duties has been established not primarily for the protection of such officers, but as a settled rule of public policy for the protection of the public, and the better assurance of fair and impartial administration of justice, without fear or favor, in the protection of life and property. The immunity applies even despite malicious or corrupt conduct in the exercise of jurisdiction. A leading authority on the subject is the historic case of *Bradley* v. *Fisher*, 80 U. S. (13 Wall.) 335 [20 L. Ed. 646]. And the subject has been so fully treated in *Yaselli* v. *Goff*, 12 Fed. (2d) 396 [56 A. L. R. 1239], affirmed in 275 U. S. 503 [48 Sup. Ct. 155, 72 L. Ed. 395], and by our own court in *Pearson* v. *Reed*, 6 Cal. App. (2d) 277 [44 Pac. (2d) 592], as to require no elaboration here.

District attorneys and public prosecutors are vested with certain *quasi*-judicial powers; and in the official exercise of those powers they enjoy civil immunity as fully as judges themselves, even though they act with evil motives or corruptly. Says the court in *Smith* v. *Parman*, 101 Kan. 115, 116 [165 Pac. 663, L. R. A. 1917F, 698]: ''The public prosecutor in deciding whether a particular prosecution shall be instituted or followed up performs much the same function

as a grand jury. If, while he has a question of that kind
under advisement, he is charged with notice that he may have
to defend an action for malicious prosecution in case of a
failure to convict, his course may be influenced by that con-
sideration, to the disadvantage of the public. . . . We think
the reason for granting immunity to judges and grand jurors
applies with practically equal force to a public prosecutor
in his relations to actions to punish infractions of the law.
There is no great danger that abuse of power will be fostered
by this exemption from civil liability, for the prosecutor is
at all times under the wholesome restraint imposed by the
risk of being called to account criminally for official miscon-
duct . . . or of being ousted from office on that account.''
In the same strain the Supreme Court of Wisconsin in *In re
Bentine,* 181 Wis. 579, 587 [196 N. W. 213, 214], quoted
from *Wight* v. *Rindskopf,* 43 Wis. 344, 354, the following
passage: ''A public prosecutor is a *quasi*-judicial officer, re-
tained by the public for the prosecution of persons accused
of crime, in the exercise of a sound discretion to distinguish
between the guilty and the innocent, between the certainly
and the doubtfully guilty.''

And in *Pearson* v. *Reed,* 6 Cal. App. (2d) 277, 287 [44
Pac. (2d) 592], the court, in reversing three separate judg-
ments against the city prosecutor of Los Angeles and order-
ing a dismissal of the action, spoke as follows:

''The office of public prosecutor is one which must be
administered with courage and independence. Yet how can
this be if the prosecutor is made subject to suit by those
whom he accuses and fails to convict? To allow this would
open the way for unlimited harassment and embarrassment
of the most conscientious officials by those who would profit
thereby. There would be involved in every case the possible
consequences of a failure to obtain a conviction. There would
always be a question of possible civil action in case the prose-
cutor saw fit to move dismissal of the case. Not only would
the prosecutor himself be subjected to groundless suits, but
his deputies likewise would be accused. The apprehension of
such consequences would tend toward great uneasiness and
toward weakening the fearless and impartial policy which
should characterize the administration of this office. The
work of the prosecutor would thus be impeded and we would
have moved away from the desired objective of stricter and

fairer law enforcement. We are well aware of the facts that in thus shielding the public prosecutor against actions of this sort the rule may work hardship and injustice in individual cases. But there is no middle ground to be occupied in the matter; either all such suits are to be tolerated or none. We are confronted with the not unusual situation that calls for the subordination of the rights of the few to the interests of the whole body of the public. The doctrine of immunity is not for the benefit of the few who might otherwise be compelled to respond in damages. It is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment, uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.''

Reference may be made further to *Kittler* v. *Kelsch*, 56 N. D. 227 [216 N. W. 898, 56 A. L. R. 1217], and the numerous cases there reviewed.

Plaintiff argues that the defendant Sherry did not act officially, but utterly in excess of any judicial powers exercisable by him as a public prosecutor. We are of the opinion, however, that plaintiff is bound by the allegations of his own complaint in that respect, and that the assertions there made cannot reasonably be construed to be anything but an attack upon Sherry, and the other two officers also, for alleged wrongdoing in their official capacities.

Concerning the defendants Brinkman and Thompson, little more need be said. In the complaint it is stated that the ordinance in question is one regulating, among other things enumerated, the erection, construction, enlargement, alteration and repair of buildings or structures; providing also for the issuance of permits therefor; establishing fire districts, and authorizing penalties for violation of its provisions.

The special grievance of plaintiff against Brinkman is that he, acting as chief building inspector of the municipality, verified the complaint against plaintiff. Unquestionably part of the duty of such officer would be to see that the requirements of the ordinance were being observed. In determining whether in a particular piece of construction work there is such a departure from the prescribed regulations as to constitute a misdemeanor, the inspector is assuredly exercising a *quasi*-judicial function, just as would a district at-

torney or a public prosecutor under like circumstances. There may have been some mistake in giving the situs of plaintiff's property a location within the boundaries of the city of Berkeley. Plaintiff's complaint seems carefully to evade fixing the exact location; but a mere error in judging an excavation to be inside, instead of perchance a few feet outside, the municipal boundary would not divest a *quasi*-judicial public servant of the immunity with which, in the public interest, the law clothes him. In this connection attention may be drawn to the ruling in *Proctor* v. *Justice's Court of the City of Berkeley*, 209 Cal. 39 [285 Pac. 312], declaring the jurisdiction of that court to be coextensive with the jurisdiction of the Justice's Court of Oakland Township.

The defendant Thompson is joined as a tort-feasor in his capacity as city manager. The city charter is a state statute of which judicial notice may be taken; and in the defendant's brief there is quoted section 28 of the charter. That section makes the manager responsible to the council for the efficient administration of all the affairs of the city. And with him rest the power and the duty ''to see that all laws and ordinances are duly enforced'', he being ''declared to be beneficially interested in their enforcement, and to have the power to sue in the proper court to enforce them''. As the chief executive and person in authority over the building inspector, he stands alongside Brinkman, and is favored with the same immunity. As an illustration of the application of the general rule, reference may be had to *Downer* v. *Lent*, 6 Cal. 94 [65 Am. Dec. 489], an action brought by a pilot whose license had been revoked by the pilot commissioners, and, as was alleged, wrongfully and maliciously. The plaintiff had judgment which, however, was reversed on appeal; the court holding that the commissioners were entrusted with certain duties, the performance of which required the exercise of judgment. ''Whenever, from the necessity of the case,'' said the court, ''the law is obliged to trust to the sound judgment and discretion of an officer, public policy demands that he should be protected from any consequences of an erroneous judgment.'' So in *Turpen* v. *Booth*, 56 Cal. 65 [38 Am. Rep. 48], exemption was extended to grand jurors, however erroneous their actions may be and however malicious their motives.

The principle is one so well established as to have become elementary; and it affords protection in general to officers and public servants exercising judgment and discretion in the discharge of their duties, howsoever they may be called. Among those in whose behalf the rule has been successfully invoked have been members of a board of health, county supervisors, food inspectors, registrars of voters, election inspectors and other officers and commissioners charged with duties of various kinds involving judgment and discretion.

The plaintiff would lay emphasis on *Carpenter* v. *Sibley,* 153 Cal. 215 [94 Pac. 879, 126 Am. St. Rep. 77, 15 Ann. Cas. 484, 15 L. R. A. (N. S.) 1143] ; but there, as stated in *Pearson* v. *Reed, supra,* the question of immunity was not raised, and accordingly that case is a vain crutch for plaintiff to lean upon.

The defendants Roth and Kneiss have no official character; and being sued *in propria persona,* they are shielded by no rule of immunity. ■ But one of the essentials of artful pleading of such cause is an averment of termination of the prosecution in favor of the accused in such manner as not to be legally susceptible of revival. Plaintiff does not allege in terms in his complaint that the prosecution was finally terminated in his favor. He contents himself with declaring that on February 11, 1937 (which was in advance of the day set for trial), ''the case was dismissed, upon motion of the said defendant Arthur Sherry, by the said Oliver Youngs as Judge of the Justice's Court of the City of Berkeley''. Such dismissal might cast some implication of want of probable cause in the first instance, but the averment falls short of pleading a complete and final determination of the proceeding in favor of the accused beyond susceptibility of revival. In dealing with this point plaintiff pins his faith upon section 1387 of the Penal Code. As was pointed out, however, in *People* v. *Hrjak,* 85 Cal. App. 301 [259 Pac. 353], and given concurrence in *People* v. *Zadro,* 20 Cal. App. (2d) 320 [66 Pac. (2d) 1204], that section is limited in its application to orders for dismissal provided in the same chapter of the code, being chapter VIII of title X, sections 1381 to 1389. So under section 1387 dismissal of an action charging a misdemeanor is not a bar to another prosecution for the same offense, unless the dismissal was necessitated by the terms of subdivision 3 of section 1382,

added by amendment made in 1931. That amendment makes dismissal of a misdemeanor case mandatory when, in the absence of postponement upon the application of the defendant, the case is not brought to trial within thirty days after the filing of the complaint. The dismissal in question was of course not under that subdivision, and hence raised no bar.

The plaintiff relies upon *Donati* v. *Righetti,* 9 Cal. App. 45 [97 Pac. 1128], and *In re Harron,* 191 Cal. 457 [217 Pac. 728]. In *Donati* v. *Righetti* (decided in 1908) what is said incidentally at page 49 concerning dismissal of a misdemeanor case overlooks the limited scope of section 1387. In the Harron case, *supra,* we fail to find anything in support of plaintiff's contention. The proceeding was one in *habeas corpus* after trial and conviction on a charge of battery. The petitioner was seeking relief upon the contention that in the case resulting in his conviction, he had been placed a second time in jeopardy for the same offense previously charged against him in a proceeding which had been dismissed without a trial. That argument was rejected in the court's concise statement at page 469 that "the plea of once in jeopardy contemplates that the trial asserted as a bar must at least have been entered upon. Here there was no trial under the first complaint".

In an action grounded on malicious prosecution not only must the complainant allege that the prosecution was with malice and without probable cause, but it is equally essential that there be an adequate averment of final termination of the proceeding in favor of the plaintiff. A complaint deficient in that particular is amenable to a general demurrer.

For the reasons stated we conclude that the judgment was properly entered in favor of the defendants, and it is therefore affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.