456 P.2d 886

Xavier TORRES, Plaintiff-Appellant,

v.

Bruce GLASGOW, Frank Turkal, Jack Love, and John Bradford, Defendants-Appellees.

No. 289.

Court of Appeals of New Mexico.

June 13, 1969.

John B. Wright, Wright & Kastler, Raton, for appellant.

Robert M. St. John, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, James A. Maloney, Atty. Gen., Roy G. Hill, Sp. Asst. Atty. Gen., Santa Fe, Jack L. Love, Albuquerque, for appellees.

## OPINION

OMAN, Judge.

This is an appeal by plaintiff from a summary judgment entered in favor of all defendants. We affirm.

Plaintiff brought suit to recover damages for the alleged wrongful issuance and service of a search warrant.

Defendant Love was at all times material hereto an Assistant District Attorney of Bernalillo County. On July 12, 1966, Mrs. Victoria Gonzales made a complaint to Love in affidavit form in which she stated that at about 4:00 p. m. on July 11, 1966, in the County of Bernalillo, she gave plaintiff permission to take three of her children to the store for ice cream; shortly thereafter the two older children were returned, but Max Torres, who was four years of age, was not returned to her; the older children, whose ages were eight and ten years, had told her that plaintiff brought them home in his automobile but had taken the four-year-old child with him; the child had been in her custody at all times since his birth; she had never been married to plaintiff; plaintiff was intentionally confining or restraining the child without consent and with knowledge on the part of plaintiff that he had no lawful authority to so confine or restrain the child.

Plaintiff and Victoria Gonzales are the parties to the custody suit involved in Torres v. Gonzales, 80 N.M. 35, 450 P.2d 921 (1969). The child, whose custody was in issue in that suit, is the four-year-old child here involved. That custody suit was filed in Colfax County on July 26, 1966.

Pursuant to the affidavit of Mrs. Gonzales, Mr. Love authorized the filing of a criminal complaint by her against plaintiff in Bernalillo County, charging plaintiff with false imprisonment of the child contrary to the provisions of § 40A–4–3, N.M. S.A.1953.

Defendant posted bail and appeared in Bernalillo County for a preliminary hearing on the charge of false imprisonment, which is a fourth degree felony. However, he did not return the child.

On July 20, 1966, Love executed a written affidavit for a search warrant for the recovery of the child from the possession of plaintiff. This affidavit recited in detail what Love had been told by Victoria Gonzales concerning the taking of the child by plaintiff; that plaintiff was residing at the Turf Motel in Raton; that plaintiff's attorney had admitted to Love that plaintiff had the child in Raton; and what had transpired in the criminal case. This affidavit was typed on a form ordinarily used in petitioning for a search warrant for property, and is entitled "Affidavit for

Search Warrant." It was presented to the Honorable John B. McManus, one of the district judges in Bernalillo County, who thereupon issued what is denominated a "Search Warrant."

This warrant was directed to the Sheriff or any constable of Bernalillo County or any State Police Officer. It described the child; recited that Love had reason to believe the child was at the Turf Motel in Raton or elsewhere in the City of Raton in the possession of plaintiff; recited that the District Judge was satisfied that the child was being concealed and possessed in the places described, and that grounds for the issuance of the warrant existed; and commanded that the officer or officers enter the places described, make a search for the child, and, if found, to take him into possession, to safely keep him until disposed of according to law, and to make return of the proceedings on the warrant without delay.

This "Search Warrant" appears upon a printed search warrant form. The information as to the name and description of the child, where it was believed the child then was, and the reasons for Love's belief that the child was unlawfully concealed and possessed by plaintiff, was typed on this form. The printed form referred to "property," and, when read together with the language typed thereon, described the child as property for which the officers were to search and take into custody. However, it is apparent from a reading of the entire "Search Warrant" that what the court was commanding the officers to do was to search for the child, take him into custody, keep him safely, and make a return of the proceedings on the warrant.

The warrant was placed by Love in the hands of Defendant Turkal, who was a Deputy Sheriff of Bernalillo County. Turkal proceeded to Raton for the purpose of executing the warrant. He located plaintiff and the child in a trailer house behind the Turf Motel. He introduced himself to plaintiff and handed plaintiff a copy of the warrant. Plaintiff stated he wished to call his attorney.

Turkal left and called Love for advice. Love advised him that he now had reasonable grounds to believe the child was in the trailer house, and that he should execute the warrant by taking the child. Love also advised him to stand by and not permit the child to be taken away, and that assistance would be on the way. Turkal then returned to the trailer house and waited until Defendant Glasgow arrived.

Love telephoned Defendant Bradford at Santa Fe, who was the Chief of the New Mexico State Police and knew Love to be an Assistant District Attorney in Albuquerque. Love advised Bradford of the foregoing stated facts, and, in addition thereto, that plaintiff claimed to be the father of the child, but had not contributed toward his support; no one in Raton had authority to hold the child; and that the Office of the District Attorney at Albuquerque took full responsibility for the actions taken.

Thereupon Bradford got in touch with Defendant Glasgow, a New Mexico State Police officer stationed at Raton, and requested that Glasgow locate and assist Turkal in executing the order.

Glasgow located Turkal, who pointed out the trailer house wherein the child was located. They knocked on the door and plaintiff, who was known to Glasgow, opened it. After several demands upon and refusals by plaintiff to deliver the child to them, they did take custody of the child.

Glasgow advised Bradford that the child had been recovered without incident, and that Turkal was returning him to Albuquerque.

This suit was then filed by plaintiff in Colfax County on July 27, 1966.

A hearing was conducted on August 11, before the Honorable C. R. McIntosh, District Judge at Raton. All parties appeared by counsel and agreed this was a hearing to show cause why defendants should not be required to return the child to plaintiff.

At the conclusion of the hearing, Judge McIntosh entered an order requiring de-

fendants to forthwith make a return of their actions under the warrant to Judge McManus, and to obtain a ruling as to the disposition of the custody of the child, or to forthwith return the child to plaintiff.

A hearing was conducted before Judge McManus at Albuquerque on October 13, 1966, and he filed a written decision wherein he gave as his opinion:

"1. That the issuance and service of the search warrant in this cause, being dated July 20, 1966, and signed by this Court was at the time of issuance in proper form and did set forth an alleged offense or violation of the Laws of the State of New Mexico.

"2. That at the time of the issuance of said search warrant, probable cause existed under the then circumstances and was shown in the affidavit attached thereto.

"3. That it is possible that the search warrant was not the proper remedy at the time but that the Court finds that its issuance was not issued in a fraudulent manner, nor was its issuance issued by any chicanery on the part of the movants for said issuance.

"4. That this Court does not make a determination as to the permanent custody of the minor child, Max Torres, but for the purpose of the hearing in this Court determines that the custody of Max Torres shall remain with Victoria Gonzales on a temporary basis, subject to a decision by another Court in another cause as to the permanent custody of said child.

"5. The Court concludes that the child, Max Torres, was produced at the Bernalillo County Court House at the time and date set for hearing in this cause.

"6. Under the light of the foregoing, it is the opinion of the Court that the child was lawfully seized under the documents presented to the Court."

As stated above, the custody suit involved in Torres v. Gonzales, supra, had been filed by plaintiff in Colfax County on July 26, 1966.

After the decision of Judge McManus was entered in Bernalillo County on October 13, 1966, defendants filed their motions for summary judgment in this cause. After hearing on these motions, Judge McIntosh entered summary judgment for defendants on July 17, 1968. His ruling was based on two grounds: (1) That Judge McManus' ruling was binding upon him, and (2) that the warrant was apparently valid on its face, with the result that defendants were immune from suit.

Plaintiff contends Judge McIntosh erred in not overruling the decision of Judge McManus and in holding that decision was binding upon Judge McIntosh. However, plaintiff's argument is directed toward the dismissal by the New Mexico Supreme Court of his appeal from the decision of Judge McManus, to which decision reference is above made. He also refers to his appeal in Torres v. Gonzales, supra, which was still pending at the time of the filing of his brief in chief in the present case.

His argument apparently is that because the Supreme Court dismissed his appeal from the decision of Judge McManus, he has been deprived of his right to a " * * * ruling on the legality of the procurement and service of the Search Warrant, * * *."

■ We agree that plaintiff has not obtained an appellate ruling on the legality of the procurement and service of the "search warrant." We do not rule on this point. Further, we do not decide whether the decision of Judge McManus was correct, or whether Judge McIntosh was bound by Judge McManus' decision. A determination of these matters by us is unnecessary, since we hold that under the circumstances of the case the defendants were immune from civil liability.

Plaintiff contends defendants were not immune from liability because the search warrant was not fair on its face. He

asserts the warrant was not fair on its face because:

"1. The Search Warrant authorized the entry and search of 'Turf Motel, Raton, New Mexico or elsewhere in said city in the possession of Xavier Torres,' and this constitutes a blanket description contrary to the provisions of *Article II, Section 10* of the *Constitution of New Mexico* and the *Fourth Amendment* to the *Constitution of the United States.*

"2. That there is no showing in the Search Warrant of 'probable cause' as contemplated by *Article II, Section 10* of the *New Mexico Constitution,* nor is there a compliance with § *41–18–1, New Mexico Statutes Annotated, 1953 Compilation,* in that there is no claim under oath that a larceny has been committed, and that the stolen goods or property is concealed.

"3. The Search Warrant was obtained for a private purpose, to-wit: Taking custody of the minor child from the father and placing it with the mother."

Plaintiff's position is that the writ was a warrant directing a search for property, and, thus its validity must be strictly determined by the requirements of a search warrant. As already stated, a printed "Search Warrant" form was used, but a reading of the entire instrument can lead only to the conclusion that it was not a warrant for the search and seizure of property, but rather an order or warrant authorizing and directing the search for and seizure of the person of a four-year-old child, who apparently had been taken and was being held unlawfully. Plaintiff overlooks the fact that a charge of false imprisonment was pending against him when the warrant was issued and that the person allegedly falsely imprisoned by plaintiff was the child named and identified in the warrant.

N.M.Const. Art. II, § 10 provides:

"The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation."

Laws 1875–1876, Ch. 27, § 84, as amended (formerly § 41–18–1, N.M.S.A.1953), (repealed 1967), which provided for the issuance of a warrant commanding a search for stolen property and the seizure thereof if found, is not applicable. Also inapplicable here are the requirements of certainty in a search warrant for property as to the place to be searched. As to these requirements of certainty, see Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); Jackson v. State, 87 Fla. 262, 99 So. 548 (1924); Williams v. State, 95 Okl.Cr. 131, 240 P.2d 1132, 31 A.L.R.2d 851 (1952); Annot., 31 A.L.R.2d 864 (1953), and cases therein discussed; I Varnon, Searches, Seizures and Immunities, Ch. V, § 7 at 295 (1961).

The child here involved, who was apparently being unlawfully held and detained by plaintiff, was not stolen property, and his right to be freed from his unlawful restraint and detention was not dependent upon the knowledge of Love, who executed the affidavit, or upon the knowledge of the court, who issued the warrant, as to the exact location of the child at the time. The child was clearly described in the warrant.

Love, as a Deputy District Attorney, was one of the law officers of the State and of the counties within the Second Judicial District, which includes Bernalillo County. N.M.Const. Art. VI, § 24; § 17–1–2, N.M.S.A.1953; § 16–3–1, N.M.S.A. 1953 (Supp.1967). Judge McManus was the presiding judge of Division I of the District Court in the Second Judicial District. The district courts are courts of general jurisdiction in New Mexico and have the " * * * power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs, remedial or otherwise in

the exercise of their jurisdiction; * * *" N.M.Const. Art. VI, § 13.

Judge McManus and Mr. Love, as district judge and law officer, respectively, were concerned with the release of the child from his apparently unlawful imprisonment and restraint by plaintiff. The fact that they may have mistakenly concluded an order or writ was necessary to effect the release of the child from the unlawful detention charged in the criminal complaint, (compare State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965), and that they may have misconstrued the nature of the order or writ which should be issued, does not confer upon plaintiff a right to recover damages for being compelled to release the child from the unlawful imprisonment or restraint plaintiff was exercising over the child. Had a writ of habeas corpus been issued by Judge McManus and served upon plaintiff, he could not be excused for disobedience thereof because of any defect of form. Section 22–11–7, N.M.S.A.1953.

Love, as an Assistant District Attorney, enjoyed immunity from civil suit under the circumstances of this case, and Judge McIntosh so recited in the summary judgment. Yaselli v. Goff, 12 F.2d 396 (2d Cir. 1926); Hartline v. Clary, 141 F.Supp. 151 (E.D.S.C.1956); Wilson v. Hirst, 67 Ariz. 197, 193 P.2d 461 (1948); Downey v. Allen, 36 Cal.App.2d 269, 97 P.2d 515 (1939); White v. Brinkman, 23 Cal.App.2d 307, 73 P.2d 254 (1937); Creelman v. Svenning, 67 Wash.2d 882, 410 P.2d 606 (1966). See also Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961); Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957). Compare Edwards v. Wiley, 70 N.M. 400, 374 P.2d 284 (1962); Vickrey v. Dunivan, 59 N.M. 90, 279 P.2d 853 (1955).

Officers Bradford, Glasgow and Turkal had the duty to cooperate with and assist Love in all reasonable ways in accomplishing the release of the child from plaintiff, who was under criminal charge for false imprisonment of the child. Section 39–1–1, N.M.S.A.1953. They knew Love to be an Assistant District Attorney, and knew Judge McManus, who had issued the warrant, to be a District Judge. Officer Bradford did not see the warrant, but the other two officers did.

Although, as above stated, the writ was unusual in form in that it was designated "Search Warrant," and used language describing the child as property, it was clear that the officers were being directed to locate the child and take him into custody. This they did, and Judge McManus subsequently conducted a hearing at which he determined that the custody of the child should remain with his mother until his permanent custody should be determined.

The warrant did not evidence on its face a clear absence of jurisdiction of the issuing authority. The officers were not required to question all the language in the writ and determine its legal effect. Nor were they obligated to question the wisdom of Judge McManus in issuing the writ, or the judgment of Mr. Love in initiating its issuance and in requesting their aid in having it executed. In our opinion, the writ would appear valid to an ordinarily intelligent and informed layman. This is all that was required to make the writ valid on its face. Territory v. Lynch, 18 N.M. 15, 133 P. 405 (1913); Hayward Lumber and Investment Company v. Biscailuz, 47 Cal.2d 716, 306 P.2d 6 (1957); Aetna Insurance Company v. Blumenthal, 129 Conn. 545, 29 A.2d 751 (1943).

Since the warrant was issued by a court of competent jurisdiction and was fair or valid on its face, the officers were protected from liability for its service and execution. Haigh v. Snidow, 231 F.Supp. 324 (S.D.Cal.1964); Hayward Lumber and Investment Company v. Biscailuz, supra; Gross v. Metcalf, 311 Ky. 616, 224 S.W.2d 938 (Ct.App.1949); 4 McQuillin, Mun. Corp., § 12.208a at 135 (3rd Ed. 1968).

The summary judgment should be affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.